E-FILED
Friday, 19 August, 2005  11:36:20 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| DENNIS LEWIS, MARK SELVAGGIO, MARY SELVAGGIO, ANTHONY SELVAGGIO, GARY NEVINS, MICHELE NEVINS, JAMES R. SCHUETT, HARRY ALTON, DORIS ALTON, BERNIE E. MYLER, LINDA R. MYLER, and JAMES HAUSMAN, on behalf of themselves and all others similarly situated, | )<br>)<br>)<br>)<br>)     Case No. 05-CV-2015<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| CIB MARINE BANCSHARES, INC., JOSE ARAUJO, JOHN MICHAEL STRAKA a/k/a J. MICHAEL STRAKA, DONALD M. TRILLING, DEAN M. KATSAROS, W. SCOTT BLAKE, NORMAN E. BAKER, HOWARD E. ZIMMERMAN, STEVEN T. KLITZING, DONALD STRAKA, and KPMG, LLP, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION

On June 23, 2005, a Motion of CIB Defendants to Transfer this Action Pursuant to 28 U.S.C. § 1404(a) (#79) was filed by Defendants CIB Marine Bancshares, Inc. (CIB), Jose Araujo, J. Michael Straka, Donald M. Trilling, Dean M. Katsaros, W. Scott Blake, Norman E. Baker, Howard E. Zimmerman, Steven T. Klitzing, and Donald Straka (collectively the CIB Defendants). The CIB Defendants also filed a Memorandum in Support (#80) and supporting exhibits. On July 5, 2005, Plaintiffs, Dennis Lewis, Mark Selvaggio, Mary Selvaggio, Anthony Selvaggio, Gary Nevins, Michele Nevins, James R. Schuett, Harry Alton, Doris Alton, Bernie E. Myler, Linda R. Myler, and James Hausman, filed their Response to the CIB Defendants' Motion to Transfer (#91). This court

has carefully reviewed the arguments of the parties and the documents submitted by the parties. Following this careful and thorough review, the CIB Defendants' Motion to Transfer (#79) is GRANTED.

FACTS

This case was originally filed in this court on January 21, 2005, by Plaintiff Dennis Lewis. On April 12, 2005, this court entered an Order (#46) which consolidated this case with Sollberger v. CIB Marine Bancshares, Inc., Case No. 05-1012, which had been filed in Peoria. This court also transferred the Sollberger case to this court, and the case was assigned Case No. 05-2090. The consolidated cases were referred to Magistrate Judge John A. Gorman for further proceedings. On May 31, 2005, Judge Gorman entered an Order (#70) which stayed discovery in both federal cases and in two related cases filed in state court.

On June 3, 2005, Plaintiffs filed their First Consolidated Complaint (#72) in this case against the CIB Defendants and CIB's outside accounting firm, KPMG, LLP (KPMG). Plaintiffs sought recovery on behalf of themselves, and all others similarly situated, "who purchased common stock of CIB Marine Bancshares, Inc." between April 12, 1999 and April 12, 2004. Plaintiffs alleged that, during the stated class period, the CIB Defendants engaged in unsafe, unsound, illegal and deceptive acts and practices, including hazardous lending practices and lax collection policies. Plaintiffs alleged that the CIB Defendants "issued and caused to be disseminated to the Plaintiffs, false and misleading Annual Reports, financial statements, letters to the shareholders and press releases all of which falsely portrayed CIB's loans, allowances for loan losses, net income, book value and resultant financial condition." Plaintiffs therefore alleged that the CIB Defendants knowingly or recklessly made, caused, or permitted misleading material statements about CIB's operations, financial position, and financial performance, and knowingly or with reckless disregard for the truth

2

made, caused, or permitted CIB to engage in unsafe, unsound and illegal banking and lending practices, and permitted management to operate and engage in those practices that were detrimental to Plaintiffs and the class.  Plaintiffs alleged that, during the class period, there were misleading statements regarding factors relating to CIB's growth strategy, loan credit quality, loan review procedures, and financial performance, among other alleged false and misleading statements. Plaintiffs alleged that the misleading statements were made in filings with the Securities and Exchange Commission (SEC), private placement memoranda, letters sent by CIB to shareholders between 1999 and 2003, and press releases.  Plaintiffs alleged that, as a result, CIB's securities traded at artificially high levels during the Class Period, and Plaintiffs and class members were damaged thereby.

Plaintiffs also alleged that KPMG was retained by CIB to perform a wide range of accounting services, including auditing CIB's Consolidated Financial Statements and preparing an Independent Auditor's Report for inclusion in CIB's Annual Report.  Plaintiffs alleged that KPMG operates through accounting partners who are licensed in various states, including Wisconsin. Plaintiffs alleged that the KPMG partner in charge of CIB's audits during the Class Period was Richard A. Brown, managing partner for KPMG's Milwaukee, Wisconsin, office.  Plaintiffs alleged that "CIB and the Individual Defendants' choice of Mr. Brown and KPMG's Milwaukee, Wisconsin, office was intentional.  They wanted someone with a national reputation who would allow them to continue to raise money through private placement offerings, but who would not aggressively audit CIB's financial statements or investigate doubtful banking practices and procedures."  Plaintiffs alleged that KPMG made representations that were materially false and misleading.  Plaintiffs further alleged that these false and misleading representations were included in its Independent Auditors' Reports which were included in Private Placement Offering Memoranda and CIB's

3

Annual Reports filed with the SEC.  Plaintiffs alleged that KPMG "knew and intended  that Plaintiffs and other class members would receive and rely on the representations contained in these documents including the representations made by KPMG."  Plaintiffs alleged that John Bean, president of CIB-Chicago, "attempted on numerous occasions to alert Mr. Brown and KPMG to the problems that existed in the loan portfolio at the Chicago branch and was rebuffed until late in 2003."  Based upon these allegations, Plaintiffs asserted claims against the CIB Defendants and KPMG under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b),78t(a) and Rule 10b-5 promulgated by the SEC, 17 C.F.R. § 240.10b-5.

In their First Consolidated Complaint (#72), Plaintiffs alleged that venue is proper in this district because "[s]ubstantial acts in furtherance of the acts alleged herein have occurred within this District and CIB has offices and does business in this District."  Plaintiffs also stated that CIB operates Central Illinois Bank in Champaign, Illinois as a wholly owned subsidiary and that the individual Defendants therefore have and currently do business in Champaign County and are subject to personal jurisdiction here.  Plaintiffs further alleged that a large number of the outstanding shares of CIB are owned by residents of this district and that the lead Plaintiff, Dennis Lewis, is a resident of Champaign County as is at least one of the individual Defendants.

On June 17, 2005, this court entered an Order (#74) which, among other things, appointed Dennis Lewis as lead plaintiff and appointed Joseph W. Phebus as lead plaintiffs' attorney.  On June 17, 2005, this court also dismissed the <u>Sollberger</u> case, based upon the filing of the First Consolidated Complaint and based upon a stipulation entered by Plaintiff Lewis and Plaintiff Sollberger.  Plaintiff Sollberger is not a party to this action and no longer has a case pending before this court.

On June 23, 2005, the CIB Defendants filed a Motion to Transfer this Action Pursuant to 28

4

U.S.C. § 1404(a) (#79).  In their Memorandum in Support of their Motion, the CIB Defendants first noted that CIB is a Wisconsin corporation headquartered in Pewaukee, Wisconsin, which is in the Eastern District of Wisconsin.  The CIB Defendants argued that, based upon the allegations of Plaintiffs' First Consolidated Complaint, Plaintiffs have implicitly acknowledged the significance of events which occurred outside of this district.  The CIB Defendants noted that Plaintiffs acknowledged in their Complaint that CIB maintained its corporate headquarters in Wisconsin throughout the alleged class period.  The CIB Defendants argued that this fact has considerable significance because the documents that lie at the heart of Plaintiffs' claim were prepared in Wisconsin.  The CIB Defendants attached the affidavit of Defendant Steven T. Klitzing.  Klitzing stated that he is the Chief Financial Officer of CIB and has held that position since 1993.  Klitzing stated that CIB's headquarters has been located in Pewaukee, Wisconsin, since 1998.  Pewaukee is located approximately 20 miles west of Milwaukee, Wisconsin.  Klitzing stated that, from 1998 to the present, CIB's shareholder mailings, private placement memoranda, press releases and SEC filings, along with other financial disclosure documents, have for the most part been prepared at CIB's Pewaukee headquarters or its Brookfield, Wisconsin, office, which is approximately 15 miles west of Milwaukee.  Klitzing stated that most of the originals of these documents and numerous other CIB corporate records have been and continue to be maintained at CIB's Pewaukee headquarters, its Brookfield office, or in off-site storage in Cedarburg, Wisconsin, approximately 22 miles northwest of Milwaukee.

Klitzing stated that CIB's reporting functions have been generally located in CIB's Pewaukee headquarters or its Brookfield office at all times relevant to this lawsuit.  CIB's controller and internal auditor work in CIB's Pewaukee offices and have worked there since at least April 1999.  Klitzing stated that Stephen C. Bonnell served as the Chief Credit Officer of CIB between

1999 and February 2004.  Klitzing stated that, as Chief Credit Officer, Bonnell was ultimately responsible for the Bank's decision to extend credit and set loan reserves.  Bonnell was also responsible for the final decisions on loan risk ratings over the life of a loan and oversaw loan policy-related issues, including setting policies regarding risk analysis and loan validation.  The loan review functions of the subsidiary banks reported to Bonnell until April 2003, when the loan review function started reporting directly to the Board.  Bonnell's chief assistant was John Meade, who worked with Bonnell on credits, collection, workout and loan review.  Klitzing stated that, as CFO, he consulted with both Bonnell and Meade to address various financial reporting issues with loan-related matters contained within the SEC filings.  Klitzing stated that neither Bonnell nor Meade is still employed by CIB or its subsidiaries.  Klitzing stated that Bonnell currently lives in Rockford, Illinois and Meade lives in Sussex, Wisconsin, approximately 23 miles northwest of Milwaukee.

Klitzing stated that KPMG has served as CIB's outside auditor since 1999 and, as such, performed reviews and, where required, audits of financial information disclosed in CIB's SEC filings.  Klitzing stated that KPMG's work was performed under the supervision of partners working out of KPMG's Milwaukee and Chicago offices by accountants working out of those offices.  This is consistent with the allegations of Plaintiffs' First Consolidated Complaint that it was KPMG's Milwaukee office involved in the audits.

Klitzing finally stated that, in 2004, CIB sold its Chicago-area banking subsidiary to First Banks, Inc.  Klitzing stated that this transaction involved the transfer of substantially all of CIB-Chicago's banking operations, including CIB-Chicago's headquarters in Mt. Prospect, Illinois, and its 16 branches located within Chicago and its suburbs.  Klitzing stated that, after the transfer, many of the former employees of CIB-Chicago continued to perform the same functions as First Bank employees.

6

Based upon these facts, the CIB Defendants argued that the key events in this case took place outside of this district and the key evidence is located outside of this district. The CIB Defendants contended that Bonnell and Meade are important witnesses because they had the ultimate responsibility for loan risk ratings and individual loan grades and because Bonnell also oversaw loan policy-related issues, including setting policies regarding risk analysis and loan validation, and the loan review functions of the subsidiary banks reported to him until April 2003. The CIB Defendants also noted that relevant audits of CIB's financial records were conducted outside this district, in Milwaukee and Chicago by KPMG and by CIB's internal auditor in Wisconsin. The CIB Defendants argued that, in their First Consolidated Complaint, Plaintiffs repeatedly attribute the losses underlying the claims of financial nondisclosure to CIB's banking operations outside of Champaign and this district. The CIB Defendants noted that Plaintiffs refer repeatedly to CIB-Chicago as the particular source of purportedly exaggerated growth and of nonperforming loans. The CIB Defendants further recognized that Plaintiffs cite John Bean, CIB-Chicago's former president, as a purported source of information about problems at CIB-Chicago. The CIB Defendants argued that former CIB-Chicago employees are likely to reside in the Chicago area, including John Bean, who resides in Arlington Heights, Illinois. The CIB Defendants also noted that, consistent with Plaintiffs' venue allegations, only one of the individual Defendants, Dean Katsaros, resides in this district.

Based upon the facts presented, the CIB Defendants argued that the case should be transferred because: (1) Plaintiffs' choice of forum is entitled to little weight because Plaintiffs have sued as class representatives on behalf of a nationwide class and because the material events leading to the litigation occurred elsewhere; (2) the Eastern District of Wisconsin would provide easier access to proof and witnesses; and (3) the Eastern District of Wisconsin is a more convenient forum

for the majority of the individual Defendants, since four of the Defendants live and work in and around Milwaukee and two others reside in Chicago, a short drive from Milwaukee.  The CIB Defendants also argued that transfer would be proper in this case because there is no compelling public interest in maintaining the case here.  The CIB Defendants specifically argued that key third party witnesses are located outside this district.  They noted that Bonnell, Meade and Bean will be key witnesses, based upon Plaintiffs' allegations.  The CIB Defendants contended that these witnesses do not reside in this district, are no longer employed by CIB, and cannot be compelled to appear because they live more than 100 miles from the Urbana courthouse.  The CIB Defendants further noted that all three of these witnesses can be compelled to testify in the Eastern District of Wisconsin because the Milwaukee courthouse is less than 100 miles from their residences.  The CIB Defendants also noted that former employee witnesses from CIB-Chicago could be subpoenaed to testify at a trial held in Milwaukee but not one held in the Central District of Illinois.

On July 5, 2005, Plaintiffs filed their Response (#91).  Plaintiffs acknowledged that this lawsuit has many connections to Wisconsin.  However, Plaintiffs contended that the CIB Defendants have understated the connections this case has with this district.  Plaintiffs noted that all of the named Plaintiffs reside in this district, that the named Plaintiffs own a significant amount of CIB stock, that 40% of the CIB sales took place here and that 40% of the plaintiff class resides here.[1] Plaintiffs further noted that one individual Defendant, several present and past directors of CIB, and numerous present and former officers and employees of Central Illinois Bank, CIB's largest banking subsidiary, reside in this district.  Plaintiffs argued that, under the facts here, the CIB Defendants

---

[1]  In their First Consolidated Complaint, Plaintiffs alleged only that Dennis Lewis is a resident of Champaign County, Illinois.  The Complaint does not include any allegations regarding the residence of the remaining named Plaintiffs or regarding the location of other class members.  For the sake of ruling on this Motion, however, this court will accept Plaintiffs' statements as true.

have not met their heavy burden to show that the transferee district is clearly more convenient.[2]

Plaintiffs further argued that this case should not be transferred because: (1) Plaintiffs' choice of

forum should be given substantial consideration by this court; (2) material events took place in this

district; (3) it is premature to identify where most of the material witnesses are located; (4) the

location of documents does not favor transferring this case; and (5) the convenience of the parties

favors Plaintiffs' forum.  Plaintiffs also contended that the interests of justice favor this forum,

arguing that the Eastern District of Wisconsin is substantially burdened with more cases and is more

prone to congestion than this district.

    In making these arguments, Plaintiffs noted that Plaintiffs and other members of the class

bought CIB stock in this district and were injured here. Plaintiffs also argued that, during the time

in question, CIB had its largest number of banking facilities in this district.  Plaintiffs argued that

the First Consolidated Complaint makes clear that the fraudulent conduct occurred at each branch

bank.  Plaintiffs stated that, "[w]hile the fraud was directed from the corporate headquarters in

Wisconsin, fraudulent activities took place on a daily basis in most of the branch banks located

outside Wisconsin."  Plaintiffs have not presented any evidence to dispute the CIB Defendants'

contention that Bonnell, Meade and Bean cannot be compelled to appear and testify in Urbana, but

dispute that Bonnell and Meade will be material witnesses in this case.  In addition, Plaintiffs

asserted that documents relevant to this matter are located in this district because the loan files at

issue here, as well as Board of Directors minutes, are located at each subsidiary branch including

---

[2] Plaintiffs have also argued that the CIB Defendants Motion to Transfer is heavily dependent upon facts that are completely in their possession and disputed by Plaintiffs.  Plaintiffs contended that, because discovery has been stayed in this case at Defendants' request, the Motion to Transfer should be stricken or limited discovery should be opened up so Plaintiffs can test the facts contained in the CIB Defendants' Memorandum and Affidavit.  This court concludes that there are adequate undisputed facts to allow this court to rule on the Motion without the need of limited discovery by Plaintiffs.

the Central Illinois Bank locations here in this district.  Plaintiffs further contended that it will be more convenient for Plaintiffs and some of the Defendants to proceed here.  Plaintiffs also argued that it would be burdensome to them, as far as time and expense, to transfer the case to the Eastern District of Wisconsin.

STANDARD

The CIB Defendants are asking this court to transfer this case to the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404(a).  Under § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  A transfer under § 1404(a) is proper if: (1) the venue is proper in both the transferee and transferor courts; (2) it is for the convenience of the parties or witnesses; and (3) it is in the interest of justice.  Restaino v. Ill. State Police, 2004 WL 1977536, at *2 (N.D. Ill. 2004).  District courts have broad discretion to grant or deny motions to transfer, and the burden is on the moving party to establish that the transfer is warranted.  Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989); MLR, LLC v. Kyocera Wireless Corp., 2005 WL 818399, at *1 (N.D. Ill. 2005); Restaino, 2004 WL 1977536, at *2.  "The decision to transfer stems from the sound discretion of the trial judge where the task of weighing factors for and against transfer 'necessarily involves a large degree of subtlety and latitude.'" Cypress Med. Prods., L.P. v. Worthington, 2005 WL 936903, at *2 (N.D. Ill. 2005), quoting Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986).  "As the moving party, [the defendants] must show that the 'transferee forum is clearly more convenient' than the transferor forum."  Cypress Med. Prods., 2005 WL 936903, at *2, quoting Heller Fin., Inc., 883 F.2d at 1293.  Further, the defendants must show that a transfer will promote the efficient administration of justice, rather than shifting the inconvenience from one party to the other.  Cypress Med. Prods., 2005 WL

10

936903, at *2.

The court must consider the relevant private and public interests in evaluating the convenience and fairness of a transfer of venue. <u>Cypress Med. Prods.</u>, 2005 WL 936903, at *2. The private interests include: (1) the plaintiff's initial choice of forum; (2) the situs of material events; (3) the ease of access to sources of proof; (4) the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of the witnesses; and (5) the convenience of the parties, specifically their respective residences and their ability to bear the expense of litigating in a particular forum. <u>Cypress Med. Prods.</u>, 2005 WL 936903, at *2; <u>Georgouses v. NaTec Res., Inc.</u>, 963 F. Supp. 728, 730 (N.D. Ill. 1997). The weight to be accorded each of these factors is left to the sound discretion of the district court. <u>Plotkin v. IP Axess, Inc.</u>, 168 F. Supp. 2d 899, 902 (N.D. Ill. 2001); <u>Georgouses</u>, 963 F. Supp. at 730.

In addition to the private interest factors, the court must also consider certain public interest factors that may warrant transfer, including: (1) the relationship of the community to the issue of the litigation and the desirability of resolving the controversies in their locale; (2) the court's familiarity with applicable law; and (3) the congestion of the respective court dockets and the prospects of an earlier trial. <u>Cypress Med. Prods.</u>, 2005 WL 936903, at 6.

## ANALYSIS

In this case, the parties agree that venue is proper in this district and in the Eastern District of Wisconsin. Therefore, this court will consider the relevant private and public interest factors in determining whether this case should be transferred.

### I.  PRIVATE INTERESTS

### A.  PLAINTIFFS' CHOICE OF FORUM

In this case, Plaintiffs contend, and this court accepts as true, that all named Plaintiffs are

11

residents of this district.  Normally, a plaintiff's choice of forum is entitled to substantial weight particularly where, as here, it is also the plaintiffs' home forum.  Cypress Med. Prods., 2005 WL 936903, at *3; see also Armstrong v. Bigley, 2004 WL 2108653, at *3 (N.D. Ill. 2004); Plotkin, 168 F. Supp. 2d at 902.  However, district courts in the Seventh Circuit have held that, when a plaintiff sues derivatively or as a class representative, significantly less deference is given to the plaintiff's choice of forum.  See Morris v. Am. Bioscience, Inc., 2004 WL 2496496, at *2 (N.D. Ill. 2004); Dortch v. Fin. Alternative, Inc., 2002 WL 598518, at *2 (N.D. Ill. 2002); Roots P'ship v. Land's End, Inc., 1990 WL 186776, at *3 (N.D. Ill. 1990); Countryman on Behalf of Upstate N.Y. Pension & Ret. Fund v. Stein Roe & Farnham, 681 F. Supp. 479, 482-83 (N.D. Ill. 1987); Schenet v. Anderson, 1986 WL 13751, at *2 (N.D. Ill. 1986); Genden v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 621 F. Supp. 780, 782 (N.D. Ill. 1985); Blake Constr. Co. v. Int'l Harvester Co., 521 F. Supp. 1268, 1271-72 (N.D. Ill. 1981).  In fact, the district court in Georgouses held that when a plaintiff alleges a class action, plaintiff's home forum is irrelevant.  Georgouses, 963 F. Supp. at 730.

This is because, where there are potentially hundreds, if not thousands, of plaintiffs from many different states, deference to the plaintiff's chosen forum is considerably weakened.  Dortch, 2002 WL 598518, at *2, citing Koster v. Lumbermens Mut. Cas., Co., 330 U.S. 518, 524 (1947). When a nationwide class is alleged, any member of the class who chooses to appear might be faced with similar inconveniences, depending on where the action proceeds.  Morris, 2004 WL 2496496, at *2; Schenet, 1986 WL 13751, at *2.  Therefore, based upon the persuasive reasoning of the cited district court decisions, this court concludes that Plaintiffs' choice of forum in this case should be afforded little weight.  In this case, Plaintiffs assert that 40% of the Plaintiff class live in this district. However, Plaintiffs have provided no information regarding the location of the remaining 60% of

12

the class.  There is nothing in the record that shows the remaining class members are not more conveniently located to the court in Milwaukee rather than Urbana.  See Georgouses, 963 F. Supp. at 730-31.  The fact that this case has not yet been certified as a class action does not alter the fact that Plaintiffs' choice of forum is given little deference because Plaintiffs themselves have purported to bring this suit as a class action and have every intention of filing a motion for class certification. See Schenet, 1986 WL 13751, at *2.

Plaintiffs suggest that this court should follow the decision of the Second Circuit Court of Appeals in DiRienzo v. Philip Servs. Corp., 294 F.3d 21 (2d Cir. 2002) and the decision of the Eastern District of Pennsylvania in Carty v. Health-Chem Corp., 567 F. Supp. 1 (E.D. Pa. 1982). This court concludes that Dirienzo is inapposite to this case because it dealt with the issue of dismissal of a class action complaint on the ground forum non conveniens rather than transfer under § 1404(a).  This court notes that "the burden under § 1404(a) is substantially less than that required for transfer under the doctrine of forum non conveniens."  Schenet, 1986 WL 13751, at *1.  In Carty, the district court concluded that the plaintiff's choice of forum was entitled to "paramount consideration" even though the case was brought as a class action.  Carty, 567 F. Supp. at 3-4.  This court notes that this is contrary to the decisions of district courts in the Seventh Circuit.  This court will instead follow the weight of persuasive authority in this circuit and concludes that Plaintiffs' choice of forum is entitled to little deference as the case has been brought as a class action.

This court therefore concludes that, in this case, Plaintiffs' choice of forum is not dispositive, but, rather, is considered as one factor among many factors in determining whether transfer is appropriate.  See Dortch, 2002 WL 598518, at *3.  Under the circumstances here, this court concludes that this factor weighs slightly in favor of Plaintiffs' choice of forum.

B.  SITUS OF MATERIAL EVENTS

13

Courts must determine whether a lawsuit has any material relationship to the district in which it is brought.  <u>Morris</u>, 2004 WL 2496496, at *3.  Based upon the allegations of Plaintiffs' First Consolidated Complaint, it appears that this district is not the situs of the majority of the material events.  <u>See</u> <u>Plotkin</u>, 168 F. Supp. 2d at 902.  Plaintiffs contend that material events occurred in this district because Plaintiffs, and other members of the class, relied on Defendants' misleading statements in this district and were injured here.  Plaintiffs also contend that CIB's facilities in the district create significant ties between the events at issue in the First Consolidated Complaint and this district.  Plaintiffs have vigorously argued that the allegedly fraudulent conduct occurred at each branch bank, many of which are located in this district.

However, this court agrees with the CIB Defendants that the majority of the material events leading to this litigation took place in Wisconsin.  The corporate policies challenged by Plaintiffs were set at CIB's headquarters in Wisconsin.  In fact, Plaintiffs have conceded that "the fraud was directed from the corporate headquarters in Wisconsin."  Most importantly, Plaintiffs' claims are based upon the creation  and dissemination of the allegedly misleading documents, the majority of which were created in Wisconsin.  <u>See</u> <u>Morris</u>, 2004 WL 2496496, at *3; <u>Plotkin</u>, 168 F. Supp. 2d at 903.  The material events are the "creation and dissemination" of the information, not the actual purchases of shares or the receipt of the press releases and other information.  <u>See</u> <u>Morris</u>, 2004 WL 2496496, at *3; <u>Plotkin</u>, 168 F. Supp. 2d at 903.  Moreover, this court agrees with the observation in <u>Schenet</u> that "national securities class actions are not 'localized controversies' in any real sense of the term."  <u>Schenet</u>, 1986 WL 13751, at *2.  "Due to the fact that this is an alleged national class action, the logical epicenter of the material events" is CIB's corporate headquarters in Wisconsin.  <u>See</u> <u>Dortch</u>, 2002 WL 598518, at *4.

Accordingly, this court finds that this factor weighs in favor of transfer.  <u>See</u> <u>Plotkin</u>, 168

14

F. Supp. 2d at 903.

## C.  ACCESS TO SOURCES OF PROOF

Generally, the ease of access to other evidence consisting of documents is considered a neutral factor when weighing whether to transfer a particular case.  <u>Restaino</u>, 2004 WL 1977536, at *3.  This is because the location of documents is not a compelling factor, given the ready availability of photocopying and the ease with which documents may be selectively shipped around the country.  <u>Morris</u>, 2004 WL 2496496, at *3.  "Transferring records is not a heavy burden to bear in light of modern photocopying and other means of transferring information."  <u>Dortch</u>, 2002 WL 598518, at *4.  Accordingly, the location of pertinent documents does not militate for or against transfer.  <u>Morris</u>, 2004 WL 2496496, at *3.

Plaintiffs also argue that this factor should be given little weight by the court because relevant documents can be found in several locations in Illinois and other states in addition to Wisconsin.  However, this court agrees with the CIB Defendants that most documentary evidence for this litigation is likely to be found in Wisconsin, primarily at CIB's headquarters and offices nearby.  <u>See</u> <u>MLR, LLC</u>, 2005 WL 818399, at *3.  Klitzing's affidavit states, and Plaintiffs essentially concede, that most of the documents Plaintiffs alleged contained misrepresentations were prepared in Wisconsin and are located in Wisconsin.  "While modern technology has now made it easier and less expensive to transfer information, this factor still weighs in favor of granting Defendants' motion."  <u>See</u> <u>MLR, LLC</u>, 2005 WL 818399, at *3. "In a complex securities case like this one, the documents needed are likely to be voluminous."  <u>Schenet</u>, 1986 WL 13751, at *4.  This court therefore concludes that this factor weighs in favor of transfer, albeit only slightly.

## D.  LOCATION OF MATERIAL WITNESSES

The convenience of the witnesses who will testify at trial often is viewed as the most

important factor to be considered in evaluating whether a transfer would be appropriate.  First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc., 2004 WL 1921059, at *4 (N.D. Ill. 2004); Heil Co. v. Curotto Can Co., 2004 WL 725737, at * 2 (N.D. Ill. 2004); Tingstol Co. v. Rainbow Sales, Inc., 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998); see also Restaino, 2004 WL 1977536, at *3.  "The court must consider the effect of location of the witnesses on the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses."  Cypress Med. Prods., 2005 WL 936903, at *4.  The convenience of non-party witnesses is substantially more important than the convenience of party witnesses, and witnesses who are employed by a party, because such party witnesses are within the parties' control.  Cypress Med. Prods., 2005 WL 936903, at *4; Morris, 2004 WL 2496496, at *3.  As a practical matter, it is usually assumed that witnesses within the control of the parties will appear voluntarily.  MLR, LLC, 2005 WL 818399, at *2.  As far as non-party witnesses, Defendants are obligated to specify particular witnesses to be called and explain the nature of their testimony.  Heller, 883 F.2d at 1293; MLR, LLC, 2005 WL 818399, at *2; Restaino, 2004 WL 1977536, at *3.  Accordingly, the "party seeking transfer must proffer a general statement of the testimony of non-party witnesses."  Cypress Med. Prods., 2005 WL 936903, at *4.  The "court considers not only the number of witnesses to be inconvenienced, but also 'the nature and quality of the testimony' to be given."  Tensor Group v. All Press Parts & Equip., 966 F. Supp. 727, 729 (N.D. Ill. 1997), quoting Pansophic Sys., Inc. v. Graphic Computer Serv., Inc., 736 F. Supp. 878, 881 (N.D. Ill. 1990); see also Dortch, 2002 WL 598518, at *3.

The CIB Defendants have identified three non-party witnesses, Bonnell, Meade and Bean, who are located in Wisconsin, Rockford, and the Chicago area.  This court agrees with the court in Tensor Group that "Milwaukee, where the Eastern District of Wisconsin court sits, is a relatively

16

short drive from Chicago." <u>Tensor Group</u>, 966 F. Supp. at 729.  The CIB Defendants have also submitted documentation supporting their assertion that Rockford is within 100 miles of Milwaukee. The CIB Defendants argue that these key witnesses can be compelled to testify at trial only if this case is transferred.

As noted, Plaintiffs have not provided any evidence to call into dispute the CIB Defendants' assertion that these three witnesses may be compelled to testify in Milwaukee, but cannot be compelled to testify more than 100 miles away in Urbana.[3]  However, Plaintiffs dispute that Bonnell and Meade will be material witnesses in this case.

This court believes that the CIB Defendants have sufficiently stated the nature of the expected testimony of Bonnell, Meade and Bean.  <u>See</u> <u>First Horizon</u>, 2004 WL 1921059, at *5.  This court also concludes that the CIB Defendants have adequately established the importance of the testimony of these witnesses.  <u>See</u> <u>Plotkin</u>, 168 F. Supp. 2d at 903 n.2.  This court further concludes that the CIB Defendants have made a persuasive argument that former employees of CIB-Chicago may be important witnesses in this case.

For the reasons stated, this court concludes that this very important factor weighs in favor of transferring the case to the Eastern District of Wisconsin where Bonnell, Meade and Bean, as well as witnesses who are former employees of CIB Chicago, are subject to compulsory process and can be compelled to testify at trial.  <u>See</u> <u>Dortch</u>, 2002 WL 598518, at *3.

### E.  CONVENIENCE OF THE PARTIES

Plaintiffs argue that the expense to try this case in Wisconsin would be a tremendous

---

[3] Plaintiffs have noted that Klitzing's affidavit regarding the location of Bonnell and Meade states only that he has been "informed" that Bonnell lives in Rockford, Illinois, and Meade's last known address is Sussex, Wisconsin.  However, this court concludes that this information is adequate for purposes of ruling on the motion to transfer.

financial burden on them compared to the corporate wealth of Defendants. This court agrees that transfer is inappropriate if it would merely shift costs from one party to another. <u>Cypress Med. Prods.</u>, 2005 WL 936903, at *5; <u>First Horizon</u>, 2004 WL 1921059, at *2. Plaintiffs point out that all of the named Plaintiffs reside in this district. However, as previously noted, this court has no information regarding the location of the other members of the proposed class in this case. Plaintiffs also point out that one of the individual Defendants, Dean M. Katsaros, resides in this district. Of the remaining individual Defendants, four are located in Wisconsin, two are located in Chicago, and two are located in other states. Based upon these facts, the Eastern District of Wisconsin will be a more convenient forum for only six of the nine individual Defendants. However, Defendants CIB and KPMG are both located in Wisconsin and it appears that the Eastern District of Wisconsin would be a more convenient forum for these Defendants.

Based upon these facts, including the fact that the named Plaintiffs all reside in this district, this court concludes that the convenience of the parties factor weighs neither in favor of transfer nor in favor of retention. <u>See</u> <u>Cypress Med. Prods.</u>, 2005 WL 936903, at *5; <u>Plotkin</u>, 168 F. Supp. 2d at 903.

## F.  CONCLUSION

Following this court's careful consideration of the private interest factors, this court concludes that the relevant factors weigh in favor of transfer. Plaintiffs' choice of forum is entitled to little weight and the remaining factors are either neutral or weigh in favor of transfer. This court specifically notes that the important factor of the convenience of witnesses weighs in favor of transfer.

## II. PUBLIC INTEREST

This court must next consider the public interest factors. Plaintiffs have not argued that the

18

first factor, the relationship of this community to the issue of the litigation, favors keeping this case

in this district.  This court agrees that, because the case was brought as a class action, this factor does

not weigh in favor of Plaintiffs.  As the district court aptly noted in <u>Dorch</u>:

> Although the Plaintiff's class has not yet been certified, there is
>
> potentially a great number of plaintiffs spread throughout the country.
>
> As such, Illinois bears no more relation to the Plaintiff's claim than
>
> does any other state where other plaintiffs may reside.

<u>Dorch</u>, 2002 WL 598518, at *4.

The second factor, the court's familiarity with the applicable law, is also neutral in this case.

This is because this case hinges on questions of federal securities law which both this court and the

Eastern District of Wisconsin are equally competent to decide.  <u>See</u> <u>Morris</u>, 2004 WL 2496496, at

*4; <u>Dorch</u>, 2002 WL 598518, at *4; <u>Tensor Group</u>, 966 F. Supp. at 731; <u>Roots P'ship</u>, 1990 WL

186776, at * 7.  In addition, this court disagrees with Plaintiffs' assertion that this court has made

several substantive rulings in this case.  This court, and Judge Gorman, have ruled on various

procedural matters.  No substantive rulings on the merits have been made in this court.  <u>See</u> <u>Tensor</u>

<u>Group</u>, 966 F. Supp. at 731.

As far as the third factor, the CIB Defendants argue that this factor is neutral also because

neither forum is more likely than the other to dispose of this case earlier.  The CIB Defendants rely

on the latest statistics reports issued by the administrative offices of the United States Courts, which

they say show that the median time from filing to disposition of cases filed in this district was 8

months and the median time in the Eastern District of Wisconsin was 7.6 months.  In response,

Plaintiffs contend that the statistics from the Federal Court Management Statistics website show that

the Eastern District of Wisconsin is substantially burdened with more cases and is more prone to

19

congestion than this district.  Plaintiffs note that the statistics show that more cases were filed in the Eastern District of Wisconsin than in this district and that more cases are pending in the Eastern District of Wisconsin than in this district.  However, this court concludes that it is the per-judge statistics which are the most relevant to this court's inquiry.  While the statistics provided by Plaintiffs show that 310 cases were filed per judge in the Eastern District of Wisconsin and 286 cases were filed per judge in this district, the number of pending cases per judge in the Eastern District of Wisconsin is 324 and the number of pending cases per judge in this district is 323.  This court particularly notes that the statistics show that, in 2004, this court had 26 trials completed per judge while the Eastern District of Wisconsin had 7 trials completed per judge.  This statistic clearly shows that the trial docket is far more congested in this district than in the Eastern District of Wisconsin.  Moreover, the statistics show that the median time from filing to trial in the Eastern District of Wisconsin is 22 months and the median time from filing to trial in this district is 25.4 months.  Based upon the statistics provided by the parties and cited by the parties, this court concludes that the evidence does not show that cases are resolved sooner in this district than in the Eastern District of Wisconsin.  See Restaino, 2004 WL 1977536, at *4.  Therefore, this court agrees with the CIB Defendants that this factor is neutral as far as determining whether this case should be transferred.  See Dortch, 2002 WL 598518, at *5; Tensor Group, 966 F. Supp. at 730.

In sum, this court concludes that the interest of justice analysis in this case is neutral and does not favor transfer or retention of this case.

CONCLUSION

Because the private interest factors favor transfer in this case and the public interest factors are neutral, this court concludes that the CIB Defendants have carried their burden and, accordingly, this court concludes that this case should be transferred to the Eastern District of Wisconsin.

IT IS THEREFORE ORDERED THAT:

(1) The CIB Defendants' Motion to Transfer (#79) is GRANTED.  This case is hereby transferred to the Eastern District of Wisconsin.

(2)  The pending Motions to Dismiss (#81, #89) are more appropriately left for the transferee forum.

ENTERED this ___19th___ day of _____August_____, 2005.

s/MICHAEL P. McCUSKEY
CHIEF JUDGE

21